[Crim. No. 1353. Second Appellate District, Division Two.—May 18, 1927.]

THE PEOPLE, Respondent, v. AGNES KELLER, Appellant.

[1] Criminal Law—Larceny—Absence of Complaining Witness on Second Trial—Due Diligence—Reading of Testimony—Discretion — Appeal — Evidence.—In this prosecution for larceny the determination of the question as to due diligence on the part of the prosecution in attempting to locate the complaining witness, who was absent on the second trial of the case, so as to permit the reading of his testimony given on the former trial to the jury, rested in the discretion of the trial court, and upon the showing made by the prosecution it is held on appeal that the discretion of the trial court was not abused by permitting the reading of the absent witness' testimony.

[2] Id. — Foundation for Reading of Testimony — Testimony of Official Reporter. — In such prosecution, there having been no evidence as to the length of time which intervened between the time when the official stenographer took the testimony of the complaining witness in shorthand and the time when he read the transcript and compared it with his notes, although "not entirely," his testimony that the transcript shown him was a transcript of the testimony taken by him at the trial, and that he had corrected it, furnished a sufficient foundation for the reading to the jury of the testimony of the complaining witness who could not be located.

[3] Id.—Performance of Duty—Presumptions.—In such action, as it is incumbent upon an appellant to show error it may be assumed

on appeal that the reporter read and corrected the completed transcript, with such aid from his notes as he deemed necessary to his purpose, while the testimony of the witness was still fresh in his recollection; and the presumption that "official duty has been regularly performed" aids to the conclusion that a sufficient foundation was laid for the reading of the testimony to the jury.

[4] ID. — ABSENCE OF WITNESS — DILIGENCE IN PROCURING PRESENCE NOT SHOWN — READING OF WITNESS' TESTIMONY — ABSENCE OF PREJUDICE. — In such prosecution, the ruling of the trial court permitting the testimony of a bank teller, given on a former trial, that on or about a specified time he cashed a check for the complaining witness and that a bill of a given denomination was part of the money which then passed over the counter, to be read to the jury over the objection that due diligence had not been shown in any attempt to procure his presence, was without prejudice, where such testimony afforded no substantial corroboration of the evidence given by the prosecuting witness, and no objection was made that it was inadmissible for any purpose.

[5] ID. — VERDICT — EVIDENCE.—In such prosecution, the evidence was sufficient to support the verdict of guilty.

(1) 16 C. J., p. 757, n. 45; 17 C. J., p. 222, n. 25, p. 242, n. 48. (2) 16 C. J., p. 759, n. 77.   (3) 16 C. J., p. 540, n. 59; 17 C. J., p. 274, n. 17.   (4) 17 C. J., p. 56, n. 16, p. 317, n. 10.   (5) 17 C. J., p. 264, n. 89.

APPEAL from a judgment of the Superior Court of San Diego County. L. D. Jennings, Judge. Affirmed.

The facts are stated in the opinion of the court.

Richard Kittrelle for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Warner I. Praul for Respondent.

WORKS, P. J.—Some time ago an opinion reversing the judgment in this action was filed by us (52 Cal. App. Dec. 641 [254 Pac. 580]). Thereafter, upon a suggestion of diminution of the record, a petition for rehearing was granted. Upon this hearing we have before us a record very different from that upon which our former opinion was based. Defendant appeals from the judgment.

Appellant was convicted upon a second trial. At the first trial the jury disagreed. The complaining witness was

not present at the second trial, but the trial judge, over the objection of appellant, permitted the district attorney to read to the jury his testimony given at the earlier hearing. [1] The objection of appellant was that the prosecution had not shown due diligence in an attempt to produce the absent witness, and the same point is now made here. Section 686 of the Penal Code provides, in part, that a defendant in a criminal action "is entitled: . . . to be confronted with the witnesses against him, . . . except that . . . the testimony on behalf of the people . . . of a witness . . . who cannot, with due diligence, be found within the state, given on a former trial of the action in the presence of the defendant who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, may be admitted."

On August 31, 1925, the cause having been tried and the jury having failed to agree upon a verdict, it was set for the second trial on September 15th. When that date arrived the complaining witness was not present in court, and on motion of the district attorney the court ordered a bench warrant to issue forthwith for him, and the trial was continued to September 21st. On the last-mentioned date a further continuance was granted to September 29th, upon motion of the district attorney, supported by affidavit. The affidavit showed that on September 6th the prosecutor received from the complaining witness a letter, dated at Los Angeles, September 5th in which he said: 'Your favor of the third instant received in reference to Keller case. I will be there with Mr. Cook if possible. I have learned he is in Yuma, Ariz. . . . I am going to Yuma Sunday morning to have a talk with Cook. . . . I also hope to locate a fellow by the name of Young who is a material witness for me. . . . I will be there in advance to read my former testimony over." The letter also gave the district attorney information concerning several witnesses other than Cook, and ended, "Hoping to see you Sept. 13, I am yours sincerely," with the signature of the complaining witness. Owing, apparently, to the state of facts disclosed by this letter the district attorney caused no subpoena to issue for service in the county of San Diego before September 15th, the date set for the second trial of the action. He did, however, take the precaution to have subpoenas, returnable September

15th, issued and transmitted to the sheriffs of San Bernardino, Ventura, Kern, Riverside, Orange, San Luis Obispo, Santa Barbara, and Imperial Counties. These were all issued on September 4th. Returns on all but two of them were filed on September 14th. One return was filed on September 15th and one on September 18th. The returns were dated variously from September 9th to September 17th, and showed that the complaining witness could not be found in any of the counties named. A subpoena was issued for service in San Diego County of September 15th, returnable September 29th, and on October 1st the sheriff made return that the complaining witness could not be found in that county. The return was filed on the same day.

In addition to the circumstances detailed above, when the district attorney was called upon at the trial to prove due diligence in his attempt to serve the complaining witness, he put a witness on the stand who testified that he was a detective sergeant in the San Diego police department; that he had made an investigation to determine whether the complaining witness could be located in the city of Los Angeles; that he went to that city on September 16th for the purpose, but that he began his investigation at a certain hotel in San Diego, where he ascertained from the register that the witness had checked out on the afternoon of September 3d and had left as a forwarding address the name of a certain hotel in Los Angeles; that he, the investigator, then went to Los Angeles, arriving there on the evening of the day he had examined the San Diego hotel register; that he immediately went to the hotel mentioned on the San Diego register and found from it that the complaining witness had registered there on the evening of September 3d and had checked out on September 5th, leaving no forwarding address; that he remained in Los Angeles four days, being engaged all that time in his investigation; that while he was there he went "to the newspaper offices in Los Angeles" and to the postoffice, but that he found no trace of the witness in that city except that he got some information, without stating the nature of it or from whom it was obtained, to the effect that the witness might be in Long Beach; that he then went there and "just made a search of the city," for he "had no specific place to go there outside of checking the postoffice"; that he did not go to the "news-

paper offices at Long Beach''; and that he found no forwarding address at the postoffices at Long Beach and Los Angeles.

We think due diligence was shown in the endeavor of the district attorney to serve the complaining witness. It is only under unusual conditions that a prosecutor can justify his course in not causing the issuance of subpoena for service in the county in which an action is to be tried, if that has been the county of the residence of a witness, merely because he has promised to be present at the trial, but we think those conditions existed here. The complaining witness had already been through one trial of the cause, and his desire further to prosecute might reasonably be inferred from that fact and from the nature of the case, which will be disclosed later. Moreover, in addition to the quotations we have made above from his letter, the missive showed in other passages his evident eagerness to be present at the second trial.

The testimony of the complaining witness, as read to the jury, showed that he was a newspaper reporter by occupation, and that at the time of the first trial, which had occurred as late as July or August, he was employed by a certain San Diego newspaper, and that he had been with the publication for three years. The subpoena which was issued on September 15th for service in San Diego County gave the office of this newspaper as the address of the witness, and we must assume that before making his return the sheriff of the county made inquiry at the office as to the whereabouts of the absentee. The investigator who went to Los Angeles on September 16th inquired about the witness at the newspaper offices there, but he did not make similar inquiry of the newspapers in Long Beach. This failure was an oversight, but we think it not of sufficient weight to interfere with a determination that due diligence was exercised. After the complaining witness had failed to put in an appearance before the court on September 15th the district attorney was justified to some extent, taking what the witness had said in his letter about a trip to Arizona, in assuming that he had departed the state and had determined to remain without its borders. The trial court, of course, was entitled to take the same view. In such a circumstance, under the decided cases, a prosecutor is not

required to make as extreme a showing of due diligence as is expected of him when there is nothing to indicate a possibility that a witness has left the state. The determination of the question as to due diligence rested in the discretion of the trial court and we think the discretion was not abused.

The official stenographer who took the testimony of the complaining witness at the first trial of the cause was called to the witness-stand for the purpose of laying a foundation for the reading to the jury of a transcript of that testimony. The reporter testified that a transcript handed him was his transcript of the testimony taken at the former trial; that he dictated to a dictaphone his shorthand notes of the testimony taken by him at the trial, which he caused to be transcribed by the regular transcriber, and that "afterwards I examined the transcript, this transcript, very carefully, and correcting any errors that appeared therein"; and that "I read the transcript over very carefully, and in case where any doubt arose as to the correctness of it, I compared it with my shorthand notes taken at the trial." On cross-examination the witness was asked if he compared the entire transcript of the testimony of the complaining witness with his shorthand notes. He answered: "Not entirely, no, sir." Appellant then objected to the reading of the transcription of the testimony to the jury, the objection was overruled and the reading proceeded. [2] Appellant now contends that the ruling was error on the ground that it was necessary to have been shown that the reporter had compared the entire transcription of the testimony of the complaining witness with his shorthand notes. We know of no rule which required such a showing, and appellant cites no authority in support of her contention. There having been no evidence as to the length of time which intervened between the time when the reporter took the testimony in shorthand and the time when he read the transcript and compared it with his notes, although "not entirely," we think his testimony that the transcript shown him was a transcript of the testimony taken by him at the trial, and that he had corrected it, furnished a sufficient foundation for the reading of the testimony to the jury. The situation here presented is not one which comes within the rule as to the method of proving that an offered paper is a copy

of an original lost or destroyed. The testimony of the complaining witness was matter which went through the mind of the reporter when he reduced it to shorthand, and again when he dictated from his notes. **[3]** As it is incumbent upon an appellant to show error, we may assume that the reporter read and corrected the completed transcript, with such aid from his notes as he deemed necessary to his purpose, while the testimony of the witness was still fresh in his recollection. The presumption of that "official duty has been regularly performed." (Code Civ. Proc., sec. 1963, subd. 15) aids to the conclusion at which we arrive. As having some bearing on the question here presented, see *People* v. *Buckley,* 143 Cal. 375 [77 Pac. 169].

**[4]** The larceny with which appellant was charged was testified by the complaining witness to have been committed not far from midnight between the eleventh and twelfth days of a certain month. The information charged that on or about the 11th appellant and another woman took from the complaining witness the sum of $530. The testimony of the complaining witness, a man, was to the effect that he was despoiled of his money during a visit, upon which he arrived late at night, at a house in which appellant lived. At the former trial a bank teller testified that on or about the 10th or 11th of the month, at the bank at which he was employed, he cashed for the complaining witness a check for $300, and that a one hundred dollar bill was part of the money which then passed over the counter. The time of this occurrence was stated by the teller without reference to the books of the bank, or to other memoranda, or without reference to any other event which fixed the time in his mind. The complaining witness testified that the check was cashed for him three or four days before the 11th. The bank teller was not present at the second trial, and, over the objection that due diligence had not been shown in any attempt to procure his presence, his testimony at the first trial was read to the jury.

We think it unnecessary to decide the point now made, that the trial court erred in permitting the reading. In addition to his relation of the events directly surrounding the larceny, the complaining witness testified that prior to that occurrence he had marked two one hundred dollar bills which were a part of the money taken from him. After the

larceny two bills of the denomination named, marked as the complaining witness testified that he had marked his, turned up under circumstances which, according to some of the evidence, indicated that they had come from the possession of appellant. The testimony of the bank teller had a highly attenuated, if any, probative value. It contributed in a negligible degree to aid the story of the complaining witness that he had marked two one hundred dollar bills, and that he had on his person $530 when he called at the house of appellant. Of course, it furnished no proof whatever that any amount had been stolen from the complaining witness. No objection was made to the testimony of the teller except upon the ground that due diligence had not been shown in an effort to procure his presence in court. The testimony afforded no substantial corroboration of the evidence given by the prosecuting witness, and that it was read to the jury was a circumstance in the case which is utterly innocuous, especially in view of the fact that no objection was made that it was inadmissible for any purpose.

[5] It is contended that the evidence was insufficient to support the verdict, but it was so plainly sufficient that we think it not worth while to marshal the testimony which supported the case of the prosecution. There was a decided conflict in the evidence, undoubtedly, but with such a situation we have no concern.

Judgment affirmed.

Craig, J., and Murphey, J., *pro tem.*, concurred.